**Masoa KONISHI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 80–7055.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1981.

Decided Nov. 19, 1981.

---

Donald L. Ungar, Simmons & Ungar, San Francisco, Cal., for petitioner.

Margaret J. Perry, Atty., Washington, D. C., for respondent.

Before DUNIWAY, ANDERSON and REINHARDT, Circuit Judges.

DUNIWAY, Circuit Judge:

Konishi sought the status of a permanent resident alien. The Board of Immigration Appeals refused his request. We vacate and remand for further consideration.

Konishi entered this country as a visitor in February, 1973, and in April of that year he had the status of a student. In March, 1975, he sought that of a permanent resident under § 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a). Permanent resident status was refused by the immigration judge and by the Board of Immigration Appeals.

Konishi is confronted by the labor certification requirement of § 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14). However, he claims to fall within the investor exemption to that requirement. This exemption, defined in 8 C.F.R. § 212.8(b)(4), has changed over the years. In its original form it read:

*Aliens not required to obtain labor certifications.*

The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require a labor certification.

. . . . .

(4) an alien who will engage in a commercial or agricultural enterprise in which he had invested or is actively in the process of investing a substantial amount of capital.

31 Fed.Reg. 10021 (1966). In 1973 clause (4) was amended to read:

(4) an alien who establishes on form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing at least $10,000 and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

38 Fed.Reg. 1380 (1973). In 1976 that same clause was amended to its present form, but it is the 1973 version that applies to this case.

Konishi is an artist. He claims to have invested more than $40,000 in an art gallery for the sale of his own work. The immigration judge found that he had not invested the necessary $10,000 and thus was not entitled to an adjustment of his status. The Board affirmed the denial of permanent resident status, but on the different ground that Konishi had failed to show that his investment tended to expand job opportunities. This theory was first proposed by the Board as an interpretation of the phrase "substantial amount of capital" in the original version of the regulation. *Matter of Heitland*, 14 I. & N.Dec. 563 (BIA 1974) aff'd 2 Cir., 551 F.2d 495, *cert. denied*, 1977, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75. It is firmly established law in this circuit that the Board's decision in *Heitland* and its application to the 1973 regulations are both impermissible circumventions of the rulemaking process, and that those aliens who invested before December, 1976 (the date of the Board's *Ruangswang* decision) had no notice of the application of the *Heitland* criteria to the 1973 regulations. *Hirunpidok v. INS*, 9 Cir., 1981, 641 F.2d 778; *Bahat v. Sureck*, 9 Cir., 1981, 637 F.2d 1315; *Patel v. INS*, 9 Cir., 1980, 638 F.2d 1199.

We recognize that the Second Circuit does not agree. *Mehta v. INS*, 2 Cir., 1978, 574 F.2d 701. However, in the Third Circuit "petitioner's application should be considered under immigration service decisions

in force at the time of his application rather than decisions less favorable to him handed down thereafter." *Pistentis v. INS*, 3 Cir., 1979, 611 F.2d 483, 488.

The Board determined that Konishi made his investment in March, 1975. Thus, he did not have notice that the *Heitland* criteria were to be applied to the 1973 regulations. The Board concluded otherwise, but that was before our decisions in *Bahat, Hirunpidok*, and *Patel*.

In a "notice of additional citations" the INS draws our attention to the decision of a regional commissioner in December, 1974, *Matter of Yang*, 15 I. & N.Dec. 147 (R.C. 1974). However, in *Bahat, supra*, we considered *Yang* and held that it did not give notice that *Heitland* applied to types of investments different from the investment in *Yang*. 637 F.2d at 1319 n.12. We have been given no reason why we should reconsider that conclusion. The investment here is quite different from that in *Yang*. There, Yang invested $10,000 in a very large corporation which was his employer.

The INS relies on our decision in *Yui Tsang Cheung v. INS*, 9 Cir., 1981, 641 F.2d 666. There, we upheld the INS contention that the 1973 version of the investor exemption is not available to professionals (specifically an optometrist) who invest only the tools of their trade and in hiring associates or auxiliary personnel. Judge Tang dissented, finding this conclusion contrary to the plain meaning of the regulation. We did not then address the question of whether the exclusion of professionals from the investor exemption was a circumvention of the rulemaking process, nor the question of notice to applicants. It is possible that these questions were not raised or that the history of this doctrine is significantly different from that of the *Heitland* criterion.

In any event, it may be that the rule laid down for the optometrist, Yui Tsang Cheung, does not apply to the artist, Konishi. In *Yui Tsang Cheung* we noted that the purpose of the act was to prevent an influx of aliens which the economy of individual localities could not absorb. We said that a professional, such as an optometrist, competes with other professionals as a skilled laborer. He may employ other professionals, but his ability to do so does not derive from investment in the tools of his trade. On the other hand, we said that entrepreneurs do not compete as skilled laborers. "The activities of each entrepreneur are generally unique to his own enterprise, often requiring a special balance of skill, courage, intuition and knowledge." 641 F.2d at 670. The same can be said of the activities of an artist.

We vacate the Board's decision and remand for further consideration in the light of this opinion and the cases here discussed. The Board must consider whether an artist who invests in an art gallery for the sale of his own works may claim the benefit of the 1973 version of the investor exemption. If it concludes that he may not, then it must consider whether the petitioner had notice of this policy and whether the policy was adopted through a procedure that is permissible under our holdings in *Patel, Bahat*, and *Hirunpidok*.

Vacated and remanded.