**Barry Dennis McGUIRE, Plaintiff,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, DISTRICT DIRECTOR, Defendant.**

No. C–92–0694 SBA.

United States District Court,
N.D. California.

July 22, 1992.

Bryne, Igleheart, Kerovsky & Byrne, San Francisco, Cal., James M. Byrne, Susana Igleheart, for plaintiff.

William T. McGivern, U.S. Atty., Stephen L. Schirle, Chief Civ. Div., Alberto E. Gonzalez, Sp. Asst. U.S. Atty., San Francisco, Cal., for defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ARMSTRONG, District Judge.

On February 7, 1992, plaintiff Barry Dennis McGuire, an illegal alien, filed a complaint in this Court seeking declaratory and injunctive relief concerning a prior deportation order. The parties appeared before this Court on June 15, 1992, for oral argument on defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(1). After having read the papers submitted and considered the arguments of the parties, for the reasons set forth below, the Court grants defendant's motion.

### I.

### FACTUAL BACKGROUND

Plaintiff Barry Dennis McGuire is a native citizen of the United Kingdom (Northern Ireland) and the Republic of Ireland. He entered the United States on February 12, 1990, without a visa, under the Visa Waiver Pilot Program ("VWPP"). The VWPP, a program administered by the Immigration and Naturalization Service ("INS"), permits citizens of designated countries to enter the United States for a period of up to ninety days without requiring that they first obtain nonimmigrant visitor's visas. *See* 8 U.S.C. § 1187 (1992); 8 C.F.R. § 217.2(a) (1992).

At the time of his entry into this country, plaintiff was asked to read and sign a three-page form entitled "Visa Waiver Pilot Program Information Form" (Form I–791). *See* Administrative Record ("AR") at 6–8. By signing this form, plaintiff acknowledged that he was authorized to stay in the United States for a maximum of ninety days and that one of the conditions of his stay was that he would not accept employment. *Id.* He further acknowledged that failure to comply with these or any other conditions of his stay would subject him to immediate deportation proceedings, and that by entering under the VWPP, he was waiving any right to challenge such deportation. With respect to the waiver of the right to a deportation hearing, this form provided, in pertinent part, as follows:

> *WAIVER OF RIGHTS:* I hereby waive any and all rights to review or appeal from an Immigration Officer's determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action for deportation. Specifically, I am waiving my rights to 1) a hearing before an immigration judge to determine my admissibility or deportability; 2) an administrative ap-

peal to the Board of Immigration Appeals; and 3) the judicial review or appeal of any or all of the above decisions. *See* VWPP Information Form (emphasis added), AR at 8.

Plaintiff signed the form on February 12, 1990, and was permitted to stay in this country until March 11, 1990. *See* AR at 5. However, plaintiff did not leave the country on or before his scheduled departure date,[1] and he also obtained employment with a construction company in San Francisco, California. Consequently, on May 29, 1991, plaintiff was arrested and ordered deported for having stayed in the country passed the specified deadline and for working without authorization. *See* Order of Deportation, AR at 15, 17. The INS deported plaintiff from the United States on June 1, 1991. *See* Warrant For Deportation, AR at 19.

Plaintiff subsequently re-entered this country on August 9, 1991, with a visa issued by the Republic of Ireland. Plaintiff was again arrested on October 17, 1991, for working without authorization. *See* INS Record of Deportable Alien, AR at 30. Since his October 1991 arrest, plaintiff has been in deportation proceedings before an immigration judge. He is presently free on bond and seeks the privilege of voluntary departure pursuant to section 244(e) of the Immigration and Nationality Act, 8 U.S.C. § 1254(e) (1992).[2]

On February 7, 1992, plaintiff filed the instant complaint in this Court seeking declaratory and injunctive relief to void the deportation order of June 1, 1991. Specifically, plaintiff's complaint raises a Due Process claim on the ground that he was deported without a hearing before an immigration judge. *See* Compl. ¶ VII. He further contends that the VWPP violates the Equal Protection Clause because non-VWPP aliens are entitled to a deportation hearing while he was not. *See id.* ¶ VIII.

## II

## DISCUSSION

### A. *The Jurisdictional Bar of 8 U.S.C. § 1105a*

■ Defendant seeks to dismiss plaintiff's complaint on the ground that under 8 U.S.C. § 1105a (1992), plaintiff is barred from contesting the prior deportation order. Section 1105a states, in pertinent part, that "[a]n order of deportation ... *shall not be reviewed by any court* if the alien ... has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c) (1992) (emphasis added). Defendant argues that under the plain terms of the statute, plaintiff may not challenge a deportation order once he has been deported. Defendant is correct.

Federal appellate courts have consistently interpreted section 1105a as barring judicial review of deportation orders *after* the alien has departed from the United States. *E.g., Joo v. INS*, 813 F.2d 211, 212 (9th Cir.1987) (per curiam) (appellate court lacked jurisdiction to review deportation order where alien departed country prior to deportation hearing); *accord Joehar v. INS*, 957 F.2d 887, 889 (D.C.Cir.1992) (alien's voluntary departure after entry of deportation order foreclosed subsequent judicial review of that order); *Saadi v. INS*, 912 F.2d 428 (10th Cir.1990) (court of appeals concluded that it had no jurisdiction to review deportation order after petitioner

---

**1.** On May 14, 1990, plaintiff, using his Republic of Ireland passport, obtained a nonimmigrant visitor's visa from the United States consulate in Belfast, Ireland. AR at 11–14. During oral argument, plaintiff's counsel admitted to the Court that plaintiff had left his Irish passport with his mother in Ireland and had completed and signed the visa application prior to his departure for the United States. His mother then submitted the application to the United States consulate on his behalf. The Court notes that one of the conditions of entry under the

VWPP is that the alien may not extend his or her stay. *See* INS Form I–791.

**2.** Plaintiff alleges that he currently desires to apply for a "voluntary departure" under 8 U.S.C. § 1254(e), but may be precluded from doing so due to his prior deportation. *See* Compl. ¶ VI. An order of deportation bars the issuance of a non-immigrant or immigrant visa for 5 years. 8 U.S.C. § 1254(e) (1992). Thus, plaintiff is challenging his prior order of deportation in order not to foreclose his subsequent reentry into the United States under a properly-issued visa.

had already been deported). The rationale for this rule is to limit "piecemeal litigation" by "forbidding repeated judicial review of an order on grounds which could have effectively been raised in the initial judicial review proceeding." *Mondragon v. INS*, 625 F.2d 270, 272 (9th Cir.1980) (citations omitted). Here, it is uncontroverted that plaintiff left the United States without contesting the deportation.[3] Thus, under the express terms of section 1105a, plaintiff is foreclosed from now seeking judicial review of that deportation order.

### B. The "Legally Executed" Exception to 8 U.S.C. 1105a

Plaintiff does not dispute the preclusive impact of section 1105a, but rather, contends that section 1105a applies only to "legally executed" deportations.[4] Under this exception, a court may review a prior deportation order, notwithstanding section 1105a, where the deportation order was procedurally defective in some manner. Examples of deportation orders which were not "legally executed" include cases where the alien was denied his right to procedural Due Process in the deportation process, *see Mendez v. INS*, 563 F.2d 956, 958 (9th Cir.1977), or where the deportation was based on an invalid criminal conviction, *Estrada–Rosales v. INS*, 645 F.2d 819, 821 (9th Cir.1981). In these and related authorities, courts have permitted aliens to challenge their prior deportation order despite the fact that they previously had been deported.

### 1. The Due Process Challenge

■ Plaintiff contends that his deportation was procedurally defective because he was denied his Due Process right to a hearing prior to being deported. Generally, "[a]liens are entitled to a full and fair hearing before being deported." *United*

*States v. Nicholas–Armenta*, 763 F.2d 1089, 1090 (9th Cir.1985). An alien, however, may relinquish his right to Due Process. *See Boddie v. Connecticut*, 401 U.S. 371, 378–79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) ("the hearing required by due process is subject to waiver"); *United States v. Villa–Fabela*, 882 F.2d 434, 440–41 (9th Cir.1989) (finding that alien's waiver of right to appeal immigration judge's decision, which was knowingly and intelligently made, barred collateral attack of deportation order). In the present case, plaintiff undeniably waived his right to a hearing upon entry into this country.

As noted above, the prerequisites for admission under the VWPP are quite specific. Among the enumerated conditions are that the alien's period of entry may not exceed 90 days, *id.*, § 1187(a)(1), 8 C.F.R. § 217.-2(a)(2) (1992), and no extensions of this period, except in the case of emergency, are allowed, 8 C.F.R. § 217.3(a)–(b) (1992). Nor may the alien become employed in this country. 8 C.F.R. § 214.1(e); *Olaniyan v. District Director, INS*, 796 F.2d 373, 375 (10th Cir.1986) ("Acceptance of unauthorized employment in violation of nonimmigrant status renders an alien deportable under section 241(a)(9) of the Act.").

Moreover, entry under the VWPP is contingent upon the explicit waiver of certain rights. Section 1187 states that "[a]n alien may not be provided a waiver under the pilot program *unless* the alien waived any right ... to contest, other than on the basis of an application for asylum, *any action for deportation against the alien*." 8 U.S.C. § 1187(b)(2) (1992) (emphasis added); *see also* 8 C.F.R. § 217.2(5)–(6) (1992). The foregoing language was adapted and incorporated into the 3–page form which plaintiff signed upon his entry into this coun-

---

**3.** Plaintiff contends that he did not have the opportunity to contest his deportation order because he was arrested and deported within a matter of hours. However, as will be discussed *supra*, this contention is unavailing because plaintiff had already waived any right to a hearing pertaining to his deportation.

**4.** Plaintiff correctly points out that none of the cases cited by defendant involve an alien deported under the VWPP. The Court has not found any published decisions which address a post-deportation challenge to a deportation order to an alien entering this country under the VWPP. Thus, the instant action is one of first impression.

try.[5] The form also notes that the alien may be immediately deported should he or she fail to maintain his or her "status and depart within the period of authorized stay." *See* VWPP Information Form, AR at 8.

In the instant matter, it is uncontroverted that plaintiff read and signed the VWPP Information Form in which he agreed to waive any right to contest his deportability under the VWPP. In fact, plaintiff admits this much in his opposition brief. *See* Pl.'s Opp'n at 2.[6] It is also undisputed that plaintiff violated the terms of his stay by remaining in this country beyond the ninety day period *and* by obtaining employment. Thus, plaintiff's arrest and subsequent deportation were entirely proper, and whatever Due Process rights plaintiff may have possessed were voluntarily waived by plaintiff. Accordingly, the Court concludes that plaintiff's deportation was "legally executed" and that the jurisdictional bar of section 1187 applies to this case.

### 2. The Equal Protection Challenge

Plaintiff premises his second constitutional attack of the VWPP on the Equal Protection Clause of the Fourteenth Amendment. Specifically, plaintiff contends that the VWPP's denial of a right to a hearing is inconsistent with similar provisions of immigration laws, and is therefore unconstitutional. He points out that every alien, including those entering illegally, are entitled to protection afforded by the Due Process Clause of the Fifth Amendment. *See Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 2391, 72 L.Ed.2d 786 (1982) (recognizing that the Fifth Amendment protects aliens whose presence in this coun-

try is unlawful from discrimination by the government). Moreover, aliens entering this country illegally have equal rights to a hearing, representation and an opportunity to challenge their deportation as those entering lawfully. 8 U.S.C. 1252(b); *e.g., Nicholas–Armenta,* 763 F.2d at 1090 ("Aliens are entitled to a full and fair hearing before being deported.").

As a threshold matter, the Court notes that it is within the province of Congress to regulate the admission of nonimmigrants. The Supreme Court has emphatically stated that " 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (quoting *Oceanic Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909); *accord Landon v. Plasencia,* 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982) ("control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature"). Because of Congress' broad authority to enact legislation governing immigration and naturalization, this Court's review of the VWPP is limited to a "rational basis" analysis. *See Fiallo,* 430 U.S. at 792, 97 S.Ct. at 1477; *Paointhara v. INS,* 708 F.2d 472, 473, *modified and reh'g denied,* 721 F.2d 651 (9th Cir.1983) ("[c]lassifications among aliens satisfy equal protection if supported by a rational basis."). Because plaintiff is, in essence, challenging the constitutionality of the VWPP, the Court will briefly review the statutory framework and purpose of the VWPP.

---

**5.** 8 U.S.C. § 1187(a)(3) (1992) authorizes the Attorney General to establish forms which the alien must complete prior to the time of admission.

**6.** Plaintiff attempts to draw a distinction as to exactly what rights he actually waived. Specifically, he claims that while he may have waived his right to challenge his deportation, he did not waive his right to concede deportability and request that an immigration judge allow him to voluntarily return to the United Kingdom. Pl'.s Opp'n at 2. This argument misses the point. The issue of whether plaintiff may voluntarily depart from the United States depends directly

on the validity of the prior deportation order. Once an alien entering this country under the VWPP has violated any of the conditions imposed by the program, he immediately becomes deportable without a hearing by an immigration judge. 8 C.F.R. § 217.4(c) (1992). The Court interprets this provision to mean that the INS District Director's deportation order may not be challenged by the alien. Thus, the key issue in this case is whether plaintiff waived his right to challenge the deportation order—not whether he waived the right to depart voluntarily from the country.

The VWPP was first adopted pursuant to section 313(a) of Immigration Reform and Control Act of 1986 ("1986 Act"), codified as 8 U.S.C. § 1187 (1992), which amends section 217 of the Immigration and Nationality Act of 1952. The legislative history to the 1986 Act indicates that Congress intended the VWPP to promote better relations with this country's close allies and to encourage tourism by establishing a system of reciprocity with respect to visa requirements. H.R.Rep. No. 99–682, 99th Cong., 2d Sess., pt. I, at 50 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5654. The waiver of the visa requirement serves to minimize administrative burdens by alleviating "vast amounts of paperwork" and thereby allowing United States consular offices to focus on higher priority responsibilities. *Id.* However, because the VWPP raises the potential for abuse, "the program is linked to the establishment of an arrival-departure system for the continued screening of immigrants as well as nonimmigrants." *Id.*

Because one of the goals of the VWPP is the reduction of administrative burdens associated with the visa requirement (coupled with concerns for the possibility of abuse), the Court finds that there is a rational basis for requiring that the VWPP applicant waive his right to challenge a deportation based on his violation of the terms of his stay. To permit each and every alien who violates the terms and conditions of his stay under the VWPP the right to a hearing would, in effect, contravene the very purpose for which the VWPP was enacted in the first place.

■ Plaintiff, having received the benefits of the VWPP—namely, entering this country without a visa—must now bear the consequences of having violated the terms of that agreement. The Court concludes that the statutory framework of section 1187, and as implemented under the VWPP, is constitutionally sound in both its structure and application; therefore, there is no merit to plaintiff's claim that his deportation was not procedurally proper.[7] As such, the "legally executed" exception advanced by plaintiff is inapplicable to this case, and the jurisdictional bar of section 1105a warrants the dismissal of plaintiff's complaint.

### III

### CONCLUSION

The Court finds that plaintiff violated the conditions of his stay in this country which were imposed pursuant to the VWPP, and that he was properly deported. The Court rejects plaintiff's arguments that his deportation under the VWPP offends the notions of Due Process and Equal Protection. Thus, because plaintiff was previously deported, and because that deportation was legally executed, this Court is without jurisdiction to review the propriety of that deportation order. Accordingly,

IT IS HEREBY ORDERED THAT defendant's motion to dismiss be granted and the complaint be dismissed with prejudice.

IT IS FURTHER ORDERED THAT judgment is entered be favor of defendant.

IT IS SO ORDERED.

---

7. Plaintiff also cites *Hernandez–Almanza v. U.S. Dept. of Justice, INS*, 547 F.2d 100, 102 (9th Cir.1976), for the proposition that an alien may attack a prior deportation order where there was "a gross miscarriage of justice at the prior proceeding." Plaintiff asserts that his being denied the option to request a voluntary departure at the time of his initial deportation was a "gross miscarriage of justice" and that he should be permitted judicial review of his deportation.

There was, however, no miscarriage of justice. As noted above, plaintiff voluntarily entered the country and voluntarily waived his rights to challenge any aspect of his deportation. The VWPP explicitly permitted plaintiff to stay in this country for ninety days. He did not leave within the specified amount of time and was deported just as he had been warned when he entered this country.